

**FILED**

SEP 20 2016

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| In re: | ) Case No. 14-31775-B-7 |
|---|---|
| RONALD CHARLES CATHCART, JR., | ) Adversary No. 15-2034 |
| Debtor(s). | ) |
| DONALD A. ODELL, D/B/A THE LAW OFFICES OF DONALD A. ODELL, | ) |
| Plaintiff(s), | ) |
| v. | ) |
| RONALD CHARLES CATHCART, JR., | ) |
| Defendant(s). | ) |

**DECISION AFTER TRIAL**

Introduction

This is an adversary proceeding to have a debt excepted from discharge under 11 U.S.C. § 523(a)(6) which excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." Plaintiff is Donald A. Odell. Plaintiff is an attorney licensed by the State of California. Defendant is Ronald C. Cathcart, Jr. Defendant is the debtor in the underlying chapter 7 case filed on December 2, 2014, as case no. 14-31775.

1

The complaint was initially filed on February 9, 2015. An amended complaint was filed on March 17, 2016. Defendant answered the amended complaint on April 20, 2016. Trial was held on September 12, 2016. Both parties appeared pro se. The court's findings of fact and conclusions of law made pursuant to Federal Rule of Civil Procedure 52(a), applicable by Federal Rule of Bankruptcy Procedure 7052, are set forth below.

Jurisdiction and Venue

Federal subject matter jurisdiction is founded on 28 U.S.C. § 1334. This adversary proceeding is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (I) and (O). To the extent this adversary proceeding may ever be determined to be a matter that a bankruptcy judge may not hear and determine without consent, the parties nevertheless consent to such determination by a bankruptcy judge. See 28 U.S.C. § 157(c)(2). Venue is proper under 28 U.S.C. § 1409.

Findings of Fact

In March of 2008, defendant and his brother were sued in Alameda County Superior Court for breach of contract and negligence arising out of a landscaping project both were hired to perform (the "Reed Matter"). In that same month, defendant met plaintiff at a Starbuck's in Pleasanton, California, to discuss plaintiff's representation of defendant in the Reed Matter.

During their meeting, the parties discussed the Reed Matter and what it would cost for plaintiff to represent defendant in

2

that matter. Although defendant had previously filed bankruptcy and owed the IRS approximately $50,000, the parties did not discuss and plaintiff did not ask about defendant's financial condition. At trial, defendant testified that his bankruptcy cases were filed thirteen years earlier and the IRS debt was in non-collection status. Defendant also testified that in 2008 he earned between $120,000 and $140,000, and he gave his 2008 tax records to plaintiff.

At the conclusion of the parties' Starbuck's meeting, defendant retained plaintiff to represent him in the Reed Matter. The parties executed a written fee agreement in April 2008. Plaintiff testified that he agreed to represent defendant because he understood that plaintiff was willing and able to pay attorney's fees and costs as required by the written fee agreement. That understanding, in turn, was based on the absence of any mention by the defendant about his financial condition.

Thereafter, plaintiff represented defendant in the Reed Matter. Throughout the course of that representation, plaintiff billed defendant for attorney's fees and costs advanced. Defendant made sporadic payments in amounts less than invoiced and sometimes made no payments at all.

Based on defendant's sporadic payments and non-payment, plaintiff threatened to withdraw from the Reed Matter. In response, defendant told plaintiff that he would continue to make monthly payments of the attorney's fees and costs he owed and that he would pay plaintiff in full by May 2009. Defendant also paid plaintiff $1,250 in or around December 2008 or January 2009.

Defendant and plaintiff had several conversations about what

defendant owed plaintiff. Defendant testified that he never told plaintiff he would not pay what he owed. Defendant also testified that he told plaintiff he was struggling financially because of the economy.

In early 2009, defendant experienced dire financial circumstances. Defendant testified that he was unable to continue making any payments to plaintiff in and around February 2009 because "overnight" his income went from between $120,000-$140,000 in 2008 to about $20,000 in 2009. Defendant also testified that at about that time he was without work, he accepted whatever work he could find, he lost the house he rented, he lived in a room provided by a friend, his vehicle was repossessed, and he went through divorce and child custody proceedings that were not amicable.

Receiving no further payment from defendant after February 2009, plaintiff sued defendant in state court for breach of contract based on defendant's failure to pay the balance of attorney's fees and costs owed under the parties' written fee agreement. Plaintiff prevailed after trial and in June of 2011 was awarded a judgment against defendant in the amount of $14,154.30, plus interest at 10%. It is that debt that plaintiff now seeks to have excepted from discharge under § 523(a)(6).

Conclusions of Law

This § 523(a)(6) action is based on the defendant's breach of the written fee agreement between the plaintiff and defendant. The state court judgment entered against the defendant in June of 2011 establishes the breach of the agreement. However, breach

alone is not enough to bring the debt within the reach of § 523(a)(6).

The general rule in the Ninth Circuit is that § 523(a)(6) applies to recoveries based on a tort claim rather than those based on breach of contract. Thus, an intentional breach of contract will not support a non-dischargeability claim under § 523(a)(6) absent additional tortious conduct. See <u>Lockerby v. Sierra</u>, 535 F.3d 1038, 1043 (9th Cir. 2008); <u>Snoke v. Riso (In re Riso)</u>, 978 F.2d 1151, 1154 (9th Cir. 1992)("It is well settled that a simple breach of contract is not the type of injury addressed by § 523(a)(6).") (citation omitted).

In narrow circumstances, a breach of contract claim may be non-dischargeable under § 523(a)(6) if the breach is both in bad faith and "accompanied by some form of 'tortious conduct' that gives rise to 'willful and malicious injury.'" <u>Petralia v. Jercich (In re Jercich)</u>, 238 F.3d 1202, 1206 (9th Cir. 2001). Whether a debtor's breach of contract is in bad faith and tortious is determined under state law. <u>Id.</u>; see also <u>Lockerby</u>, 535 F.3d at 1041. Under California law, "[c]onduct amounting to a breach of contract becomes tortious only when it also violates an independent duty arising from principals of tort law." <u>Lockerby</u>, 535 F.3d at 1041. Additionally, "in California, tort recovery for a bad faith [tortious] breach of contract is only available when the debtor's conduct also violates a *fundamental public policy* of the state[.]" <u>Coastal Indus. Partners, LLC v. Lawson (In re Lawson)</u>, 2015 WL 1291366 (9th Cir. BAP 2015) (citing <u>Jercich</u>, 238 F.3d at 1206) (emphasis in original).

As stated above, the state court judgment entered against

the defendant in June of 2011 establishes defendant's breach of the parties' written fee agreement. However, in order to bring that breach within the realm of a bad faith and tortious breach actionable under § 523(a)(6), plaintiff asserts that the breach was accompanied by fraud in the inducement and fraud in the performance of the parties' written fee agreement. As to the former, plaintiff asserts that defendant induced him to enter into the written fee agreement and represent him in the Reed Matter by concealing his financial condition. As to the latter, plaintiff asserts that defendant's minimal payments, promises of continued payment, and promises of future payment in full were made with the intent to deceive plaintiff and to prevent plaintiff from withdrawing from the Reed Matter. As explained below, plaintiff has failed to carry his burden of proving fraud either in the inducement or in the performance of the parties' written fee agreement.

Under California law, an omission is fraudulent only if there is a duty on the party making the omission to disclose. SCC Acquisitions, Inc. v. Cent. Pac. Bank, 207 Cal. App. 4th 859, 864 (2012) (quoting Blickman Turkus, LP v. HF Downtown Sunnyvale, LLC, 162 Cal. App. 4th 858, 868 (2008)). Plaintiff produced no evidence that defendant was under any duty to disclose his financial condition. In fact, plaintiff did not even allege the existence of any such duty.

Nevertheless, California law also recognizes that in transactions that do not involve a duty to disclose, a cause of action for non-disclosure of material facts may arise in at least three instances: (1) if the defendant makes representations but

6

does not disclose facts which materially qualify the facts disclosed, or which render the disclosure likely to mislead; (2) if the facts are known or accessible only to defendant, and defendant knows they are not known to or reasonably discoverable by the plaintiff; or (3) if the defendant actively conceals discovery from the plaintiff. Marketing West, Inc. v. Sanyo Fisher (USA) Corp., 6 Cal. App. 4th 603, 613 (1992) (citation omitted). Plaintiff has not established that any of these circumstances apply.

Inasmuch as the parties did not discuss defendant's financial condition during their initial Starbuck's meeting, there was nothing for defendant to materially qualify. Thus, the first instance does not apply.

Regarding the second and third instances, defendant testified that he gave his 2008 tax information to the plaintiff. Defendant did not indicate whether he gave his 2008 tax information to the plaintiff before or after the parties entered into the written agreement. However, if before, the second and third instances are inapplicable because there would be no concealment. Even if after, based on the act of disclosure the court concludes that defendant's financial condition was not actively concealed and was reasonably discoverable by and available to the plaintiff. And in any event, it was such that defendant, at the time, could afford to pay plaintiff.

As to the fraud in the performance, the court is not persuaded that defendant's minimal and sporadic payments and defendant's promises to pay plaintiff monthly and in full were deceptive or made with the intent to deceive plaintiff so that

Case 15-02034   Filed 09/20/16   Doc 50

plaintiff would continue to represent defendant in the Reed Matter. Rather, the evidence is overwhelming and undisputed that defendant suffered a dramatic decrease in income between 2008 and 2009. "Overnight" defendant's income went from between $120,000-$140,000 to $20,000. Defendant also lost his house, his car was repossessed, he had bill collectors after him, he was engaged in divorce and child custody proceedings, and he was living in a room provided by a friend. Defendant's testimony on these matters is undisputed and unchallenged, and the court finds it credible.

The court is persuaded that defendant paid plaintiff what he could afford and defendant lacked the means to pay plaintiff more than he did. In other words, plaintiff has failed to establish that defendant intended to defraud him out of his legal services. On this issue of intent, the court gives greater weight to defendant's testimony and finds defendant's testimony more credible than plaintiff's testimony. In an attempt to establish defendant's intent to defraud, plaintiff testified that defendant made no payments to the Reed Matter plaintiffs under a settlement agreement reached in that case. Plaintiff based that statement on a conversation he had with the attorney for the Reed Matter plaintiffs. On cross-examination, however, plaintiff conceded that he spoke with the attorney for the Reed Matter plaintiffs in March of 2009 and the Reed Matter settlement agreement did not require payments by the defendant until May 2009.

In short, plaintiff has not established tortious conduct associated with defendant's breach of the parties' written agreement. That leaves plaintiff with a breach of contract

claim, perhaps even an intentional one.  However, that alone does not support a § 523(a)(6) non-dischargeability claim.  See Lockerby, 535 F.3d at 1043.[1]

Conclusion

Based on the foregoing, judgment on plaintiff's § 523(a)(6) claim will be entered for the defendant and against the plaintiff with plaintiff taking nothing on his § 523(a)(6) claim.  Any debt that defendant owes plaintiff based on the state court judgment and/or arising out of the parties' written fee agreement will be discharged in the defendant's chapter 7 case.

A separate judgment will be entered.

Dated: September 20, 2016.

_____
UNITED STATES BANKRUPTCY JUDGE

---

[1] Even assuming plaintiff established tortious conduct, plaintiff's § 523(a)(6) claim would still fail.  As stated above, in addition to tortious conduct, California law also requires the tortious conduct violate some fundamental public policy of the state. Plaintiff put forth no evidence of any fundamental public policy of the State of California that defendant violated by his breach of the parties' written fee agreement.  This defect in plaintiff's tortious breach of contract claim is fatal to the § 523(a)(6) claim.

9

**INSTRUCTIONS TO CLERK OF COURT**
**SERVICE LIST**

The Clerk of Court is instructed to send the attached document, via the BNC, to the following parties:

Donald A. Odell
6200 Stoneridge Mall Road #300
Pleasanton CA 94588

Ronald Charles Cathcart Jr.
PO Box 3384
Livermore CA 94551